## JONES v. SOUTHWESTERN GAS & ELECTRIC CO.

### No. 5376.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Milton E. Johns, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff brings this action sounding in damages for the alleged wrongful discontinuance by defendant of electric current to his residence in the city of Shreveport. Defendant admits, as charged by plaintiff, that the current was cut off by one of its employees on January 22, 1936, and pleads warrant in law, and justification under the terms of its contract with plaintiff for so doing.

From a judgment for plaintiff for $150, defendant brings this appeal.

Defendant supplied electricity to plaintiff while occupying, at different times, two residences in the city of Shreveport. The first of these was a five-room house and the average consumption over a period of 59 months was 27.2 kilowats. The other one, being that which was occupied by him and several members of his family when the cause of this suit arose, has seven rooms. The average monthly consumption therein for the 20 months ending December 20, 1935, was 18.3 kilowats. On January 20, 1936, defendant's meter reader, on his regular monthly itinerary, called at plaintiff's house to check the meter to ascertain the quantity of electricity consumed for the month ending on that date. The meter registered only one kilowat for the period. This fact is conceded, and here we should add that there is no charge whatsoever that the meter was not in good mechanical order during said period. On the contrary, the meter's good condition was virtually admitted by plaintiff during the trial of the case. Defendant's agent, the meter reader, testified that he found attached to the meter what is commonly known as and referred to as a movable by-pass, which is simply a piece of insulated wire reduced to the shape of a U. This device, he said, had the insulation removed from about one inch of either end and the exposed wire introduced into the meter through two of the four holes therein by the side of and adjacent to electric wire cables attached for the correct operation of the meter. It is not disputed that if the exposed ends of such a by-pass are properly contacted with a certain interior metal part of the meter, the current entering through it will be registered at a reduced rate, or not at all, dependent upon the efficacy of contacts. This agent also testified that he removed the by-pass and informed a lady and gentleman in the house (plaintiff's wife

and her father, we think), of the fact and told them that plaintiff would have to come to defendant's office to adjust the matter. This suggestion was not followed until after the current was cut off two days later. It is the contention of defendant that the use of the by-pass is not only responsible for the nonregistry of current for the 30 days ending January 20, 1936, but also for the apparent reduced consumption thereof, as is reflected from the difference in the average monthly consumption of the two residences, referred to above. Plaintiff's only explanation of the meter's low registration for the 30 days ending January 20th, is that for this period he and his wife were almost nightly in attendance at political meetings in the city, and therefore the lights in his home were sparingly burned. It is not contended that other members of his household were not at home while he and his wife were assiduously devoting their time to politics. This explanation loses much of its force, if not all of it, when it is recalled that the record discloses that plaintiff and his wife regularly attended tliese nightly meetings during the month ending December 20, 1935, and that for this period the meter registered 16 kilowats. The same comment is pertinent to some extent to the month ending November 20th.

Plaintiff was not at home when the by-pass was found in the meter. He stoutly denies any knowledge of it being there, and, by innuendo at least, says it was not found there by defendant's agent. He is corroborated in the main by his wife and other persons living in his home. However, the inescapable fact is that the nonregistry of current passing through the meter can only be accounted for by admitting that it was accomplished through the use of a by-pass, and for such use plaintiff is responsible. It is unthinkable that such a device could have been employed in his home for the period named and to the extent necessary to virtually make registry impossible, and he not have knowledge of it. The insulation of the wires along which the ends of the by-pass were pushed to gain entrance into the meter bear marks indicative of such fact. The contract between the parties contains this condition:

"Protection of Company's Property. The customer will properly protect the Company's property on the customer's premises from loss or damage and will permit no one who is not an agent of the Company to remove or tamper with the Company's property or its operation."

■ Using, or allowing the use of the by-pass was clearly an active violation of this part of the contract, the observance of which obviously is of first importance to defendant. Such a violation certainly confers on defendant the unquestionable right to discontinue the supply of energy until, at least, an adjustment on fair and equitable basis has been reached by the parties. Deny such a right to a supplier of electric current and you at once put him at the mercy of those who desire to impose upon or defraud him.

■ It is well settled now that a supplier of gas or electricity has the right, under reasonable rules, to discontinue such service for nonpayment of the price thereof. A fortiori, has the supplier of such service the right to terminate same when the customer, or some one for whom he is responsible, tampers with the meter in such way that correct registry of consumption is made impossible and the proper amount due by the customer for any given period not ascertainable? In Sullivan v. Natural Gas Company (La.App.) 154 So. 387, defendant was held justified in cutting off the gas supply because plaintiff had not complied with the company's rules and the laws of the city of Monroe, requiring the obtention of an inspection certificate.

No rule of defendant authorizing it to cut off electric current to a customer under the circumstances of the present case is shown. We think none necessary to warrant such action. It seems to us to approach the realm of absurdity to say that in such circumstances discontinuance of the service could only be justified because of such a rule. Active breach of the contract by plaintiff constituted a valid excuse by defendant to adopt the course it followed.

■ The Legislature has taken cognizance of the matter herein discussed by the adoption of Act No. 63 of the Extra Session of 1921. This act is a criminal statute, and, inter alia, declares that the presence at any time on or about a meter in a room or other place of any device which diverts electric current, resulting in the incorrect registration thereof, shall constitute prima facie evidence of knowledge on the part of the person having custody or control of such room or place wherein such device is located, of the

existence and presence thereof; and shall constitute prima facie evidence against such person of the intent to defraud. If the presence of a movable by-pass on a meter, for the purposes of this penal law, constitutes prima facie guilt of the one having control of the house, the probative weight of such fact in a civil case is much greater.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside; plaintiff's demand is rejected, and his suit dismissed at his cost.